## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| TERRENCE HAMILTON,       ) | |
|     Plaintiff,       ) | |
| ) | CIVIL ACTION: 14-00560-KD-M |
| v.       ) | |
| ) | |
| SMS TECHNICAL SERVICES, LLC,       ) | |
|     Defendant.       ) | |

### ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (Docs. 19-21), Plaintiff's Response (Doc. 23) and Defendant's Reply (Doc. 24).

### I.     Background[1]

On December 3, 2014, Plaintiff Terrence Hamilton (Hamilton), an African American proceeding *pro se*, initiated this litigation against SMS Technical Services, LLC (SMS),[2] alleging race and disability discrimination in violation of Title VII of the *Civil Rights Act of 1964,* 42 U.S.C. § 2000e *et seq.* and Title I of the *Americans with Disabilities Act* (ADA), 42 U.S.C. § 12112 *et seq*.   (Docs. 1, 3 (1/13/15 amended complaint)).

In 2014, Hamilton was employed as a temporary worker by non-party Advantage Staffing (a temporary staffing agency).   (Doc. 21-1 (Dep. Hamilton at 20-21); Doc. 21-2 at 9

---

[1] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

[2] Defendant was originally named as SMS Millcraft, Inc.   However, Defendant has appeared not as SMS Millcraft, Inc. but as SMS Technical Services, LLC, stating that Plaintiff incorrectly named them in the complaint. (Docs. 7, 8).   As such, the Court takes judicial notice of same and corrects the name of the Defendant in this *pro se* case to SMS Technical Services, LLC.   The Clerk is **DIRECTED** to correct the Defendant's name accordingly.
    Additionally, Plaintiff also originally sued individual defendants Tamara Baughton and Joe Trowbridge. (Doc. 1).   However, these defendants were never served with the Complaint and/or Summons.   As such, to the extent these individual defendants are still included in this case they are hereby **DISMISSED** due to Plaintiff's failure to serve them and his failure to litigate his claims against them.

(Plf's Resp. to RFA¶1)). In June 2014, Advantage Staffing assigned Hamilton to SMS to temporarily work for two (2) weeks as a millwright at SMS' worksite in Calvert, Alabama.

Prior to his arrival at the SMS worksite, on May 30, 2014, Hamilton underwent a physical and medical examination at Springhill Medical Center Clinic. (Doc. 3; Doc. 21-1 (Dep. Hamilton at 74-75)). The examination included questioning and a physical exam as well as testing of Hamilton's ability to carry loads, his breathing and his dexterity. (Doc. 21-1 (Dep. Hamilton at 79)). Hamilton reported a history of chronic bronchitis but the examination concluded he "sounds clear today." (Doc. 3 at 8). The examiner found Hamilton's general appearance good and physical findings normal, and he was certified as fit for work with no impairments or limitations. (Doc. 21-1 (Dep. Hamilton at 77, 81-85, 114)). Hamilton's medications were reviewed; he was told they should not impact his ability to work. (Id. (Dep. Hamilton at 77)). Hamilton received a clean bill of health. (Id. (Dep. Hamilton at 106)).

Upon arrival at the SMS site, Hamilton (and other temporary workers) were required to complete a safety training class and take a test (not graded on a pass/fail basis but given to employees to understand safety information). (Doc. 21-5 (Decltn. Baugus)). Hamilton completed the tests on June 3 and 4, 2014 and corrected any wrong answers by writing in the correct answers and initialing them, as he was instructed to do by HR Manager Baugus "to demonstrate that they understood what the right answer should have been." (Id. at 3). Hamilton asserts that he told Baugus he may not have scored well as he was "sick on the stomach" from medicine and asked to retake the test but she did not respond to his request. (Doc. 21-1 (Dep. Hamilton at 86-87)). Baugus contends that Hamilton did not "mention anything" to her "about being on medication." (Doc. 21-5 (Decltn. Baugus at 3)). Hamilton

2

admits he did not tell Baugus the medications he was taking nor mention any disability, need for assistance or accommodations. (Doc. 21-1 (Dep. Hamilton at 105-106, 113-114)).

On June 3, 2014, Hamilton received verbal instructions for daily assignments. (Doc. 21-4 (Decltn. Trowbridge)). Later that day, when Supervisor Joseph Trowbridge was checking on the assignments and walking the worksite, he observed Hamilton standing around, leaning on equipment and not helping -- seeing no effort to assist his co-workers. (Id.) A co-worker, Jesse Hyde, also observed Hamilton watching others instead of helping with assignments. (Doc. 21-6 (Decltn. Hyde)). On June 4, 2014, Trowbridge asked HR manager Baugus to observe Hamilton and she observed him standing around, leaning on equipment and not attempting to help others. (Doc. 21-5 (Decltn. Baugus)). On June 5, 2014 Trowbridge and Baugus observed Hamilton not working as expected. (Id.; Doc. 21-4 (Decltn. Trowbridge)). As such on that date SMS asked Advantage Staffing not to continue Hamilton's assignment to SMS due to his lack of performance, and he returned to Advantage Staffing. (Id.)

During the few days Hamilton was assigned to the SMS site, he never told anyone at SMS that he had a disability. (Doc. 21-1 (Dep. Hamilton at 113-115)). None of the SMS employees who interacted with Hamilton while he was on assignment at the SMS job site were aware of any disability. (Docs. 21-4, 21-5, 21-6 (Decltn. Trowbridge), (Decltn. Baugus), (Decltn. Hyde)). No one at SMS made negative comments to Hamilton about race or disability, no one at SMS told him his assignment was ending due to race or disability, and he never complained to anyone at SMS or Advantage Staffing about discrimination. (Doc. 21-1 (Dep. Hamilton at 64, 68, 70)). Hamilton also testified that he is not aware of anyone who was treated the same as he, or more favorably than he was. (Id. (Dep. Hamilton at 119-120)).

3

On July 16, 2014, Hamilton filed a Charge of Discrimination with the EEOC alleging that SMS discriminated against him based on his race and disability, as follows:

> I am Black and have a disability. I was hired by the Respondent on May 30, 2014 as a Millwright Mechanic. On June 4, 2014, I asked to retake a portion of a test which I failed while under medication. I asked Tamara Baugus (White/HR Representative) to allow me to retake the portion of the test after the medication effects subsided. My accommodation request was denied. My employment was terminated on June 5, 2014. I believe I was denied an accommodation and terminated because of my race and disability.
>
> I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended; and Title I of the Americans with Disabilities Act Amendments Act of 2008.

(Doc. 3 at 4). Hamilton commenced this litigation on December 3, 2014 (Doc. 1) and in a January 12, 2015 amended complaint (Doc. 3) alleges Title VII discrimination (discriminatory termination) and a Title I disability discrimination (failure to accommodate).

## II.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>   **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>   **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may

> consider other materials in the record.
>
> ***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

Defendant, as the party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmovant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the movant is entitled to summary judgment. Celotex, 477 U.S. at 323. In assessing whether the nonmovant has met its burden, "the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter….Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 999 (11th Cir. 1992).

**III.    Discussion**

**A.    Hamilton's Employer**

Hamilton asserts a Title VII claim for race discrimination and a Title I claim for disability discrimination. Title VII prohibits an employer from discriminating against a person based on race. 42 U.S.C. § 2000e–2(a)(1). Section 2000e–2(a)(1) makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" Title 1 of the ADA prohibits discrimination by employers "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The general rule provides: "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Thus, as a threshold matter, the statutes make clear that for an individual to recover, "[t]he establishment of an employment relationship is required[.]" Reeves v. DSI Sec. Servs., 331 Fed. Appx. 659, 661 (11th Cir. Jun. 3, 2009); Lewis v. Asplundh Tree Expert Co., 402 Fed. Appx. 454, 457 (11th Cir. Nov. 8, 2010) (noting that an "employer-employee relationship" is necessary to "trigger liability"). "[O]nly those plaintiffs who are 'employees' may bring a Title VII suit." Smith v. Eike, 2012 WL 2373294, *2 (M.D. Ala. May 23, 2012).

SMS denies that it was Hamilton's employer and moves for summary judgment on this threshold issue. (Doc. 7 at 2, 4, 7 (Answer); Doc. 20). The evidence of record, including Hamilton's own allegations, testimony, and Rule 36 admissions, support SMS' position.

Specifically, in his Amended Complaint, Hamilton alleges that he "was recruited by

6

Advantage Staffing, Inc. to work" for SMS. (Doc. 3 at 1). Hamilton worked at SMS for only a few days and after he was released from working at the site, he reported to Advantage Staffing "to find out what had happened and turn in some tax forms." (Id. at 4). Additionally, Hamilton testified that he was employed solely by Advantage Staffing. (Doc. 21-1 (Dep. Hamilton at 20-21); Doc. 21-2 (Resp to RFA ¶1)). Hamilton testified that Advantage Staffing recruited him, assigned him to work at SMS, and paid him (that he was not paid by SMS). (Doc. 21-1 (Dep. Hamilton at 20-21, 65)). Hamilton testified that SMS did not ask him to complete an employment application, he was just working temporarily on assignment at SMS through Advantage Staffing, and that he did not receive an SMS handbook because "they only give those out when they [SMS] actually hire you[]" and "they [SMS] wasn't hiring me[]" -- he was just coming to SMS through Advantage Staffing. (Doc. 21-1 (Dep. Hamilton at 150-152)). Hamilton further specified he was not an SMS employee:

> Q: …And you weren't an employee [of SMS]?
> A: No, not at all with them [SMS].

(Id. (Dep. Hamilton at 152)). Moreover, Hamilton's testimony indicates that Advantage Staffing issued his pay stubs as "that's who was actually paying us." (Doc. 21-1 (Dep. Hamilton at 20-21)). Hamilton testified that he did not fill out an employment application at SMS for the June 2014 temporary assignment, but instead at Advantage Staffing. (Id. (Dep. Hamilton at 150-151)). Further, Hamilton admitted, in response to SMS' Requests for Admission, that he was solely employed by Advantage Staffing in May and June 2014 (the relevant time frame).[3] (Doc. 21-2 at 9 at ¶1)). Finally, in response to SMS' motion, Hamilton

---

[3] Rule 36 provides in relevant part that "[a] matter admitted under this rule is conclusively established[]" unless withdrawn or amended. Fed.R.Civ.P. Rule 36(b). See e.g., Williams v. City of Dothan, Ala., 818 F.2d 755, 762 (11th Cir. 1987). Hamilton has neither withdrawn nor amended his Rule 36 admissions, nor opposed

admits that he "was recruited by" the staffing agency "to work at SMS." (Doc. 23 at 1). Hamilton submits no evidence establishing that SMS was his employer, or that an employer-employee relationship existed between he and SMS. However, even assuming arguendo that Hamilton *could* establish SMS as his employer, his race and disability discrimination claims fail for the reasons which follow.

B.      Race Discrimination: Discriminatory Termination

Hamilton may support his claims with direct evidence, circumstantial evidence, or statistical proof. Rioux v. City of Atlanta, Ga. 520 F.3d 1269, 1274 (11th Cir. 2008).[4] There is no allegation or submission of direct evidence or statistical proof by Hamilton. Hamilton's claim of race discrimination is accordingly based on circumstantial evidence.

Where there is only circumstantial evidence, courts apply the framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000). Under McDonnell Douglas, the plaintiff has the initial burden of establishing a prima facie case of race discrimination. Id. To establish a prima facie case of discriminatory termination, Hamilton must show he was: 1) a member of a protected class; 2) qualified for the position; 3) suffered an adverse employment action; and 4) replaced by someone outside his protected class or was treated less favorably than an individual outside of his protected class. Maynard v. Board of Regents of the Divs. of Univs. of Fla. Dept. of Ed., 342 F.3d 1281, 1289 (11th Cir. 2003); Hinson v. Clinch Cty., Ga. Bd. of Ed., 231 F.3d 821, 828 (11th

---

plaintiff's motion for summary judgment as to SMS not being his employer. See generally Baxter v. Johnson & Freedman, LLC, 2012 WL 2921799, *2 (N.D. Ga. May 10, 2012).

4 Direct evidence is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). See, e.g., Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227-1228 (11th Cir. 2002); Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999); Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998); Burrell v. Board of Trustees of Ga. Military College, 125 F.3d 1390, 1393 (11th Cir. 1997).

Cir. 2000); Ezell v. Darr, 951 F.Supp.2d 1316, 1334 (M.D. Ga. 2013).   If Hamilton establishes her prima facie case, the burden of production shifts to SMS to rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action.   Perkins v. Kushla Water Dist., 21 F.Supp.3d 1250, 1266 (S.D. Ala. 2014); Smith v. City of Ft. Pierce, Fla., 565 Fed. Appx. at 776-777; Bryant, 575 F.3d at 1308.   If SMS carries this burden, the burden shifts back to Hamilton to demonstrate that its proffered reasons were a pretext for retaliation and that her protected activity was the "but-for" cause of the adverse action. Mealing v. Georgia Dept. of Juvenile Justice, 564 Fed. Appx. 421, 427 (11th Cir. 2014).

A plaintiff may rely on evidence previously submitted as part of her prima facie case. Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000).   Additionally, an employer's reasons may be shown to be pretextual "by revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [its] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Springer v. Convergys Customer Mgmt. Grp., 509 F.3d 1344, 1348 (11th Cir. 2007) (quotation omitted). However, a reason cannot be a "pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason."   St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (quotation omitted).   If the reason is one that might motivate a reasonable employer, a plaintiff cannot merely recast the reason, but must "meet that reason head on and rebut it[]" Chapman, 229 F.3d at 1030, showing pretext with "concrete evidence in the form of specific facts[]" Bryant, 575 F.3d at 1308.   "Conclusory allegations and assertions" will not suffice.   Id.   That an employer's decision was subjective, or that it was based on an unwritten or informal policy subject to differing interpretations, without more, does not show that it was

pretextual. Conner v. Fort Gordon Bus Co., 761 F.2d 1495, 1501 (11th Cir. 1985). And "[w]hen a plaintiff chooses to attack the veracity of the employer's proffered reason, '[the] inquiry is limited to whether the employer gave an honest explanation of its behavior.'" Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1310-1311 (11th Cir. 2012).

Further, in Sims v. MVM, Inc., 704 F.3d 1327, 1332–1333 (11th Cir. 2013), the Eleventh Circuit clarified that the McDonnell Douglas framework is not the sine qua non for a plaintiff to survive summary judgment. See also Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011). "The plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Id. A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. Id. See generally Hamilton v. Southland Christian School, Inc., 680 F.3d 1316, 1320 (11th Cir. 2012).

For purposes of summary judgment only, the Court assumes that Hamilton has established his prima facie case of race discrimination. Even so, SMS has offered a legitimate non-discriminatory reason for releasing Hamilton from the temporary work assignment: he was not working hard, he showed up late, and he stood around and failed to help his teammates for the few days he was at SMS. See supra Section I. Hamilton has wholly failed to rebut SMS's proffered reason of lack of performance. Likewise, Hamilton has failed to establish pretext, instead merely quarrelling the SMS' business decision, and providing no evidence of discrimination. Further, Hamilton has failed to submit any evidence indicating that race was a motivating factor in SMS's decision to release him. Finally, the record does not present a

convincing mosaic of circumstantial evidence that would allow a jury to infer discrimination based on race by SMS.  As such, SMS's motion on Hamilton's race discrimination claim is **GRANTED**.

C.      **Disability Discrimination: Failure to Accommodate**

Pursuant to the ADA, an employer may not discriminate against "a qualified individual with a disability because of the disability of such individual in regard to...the hiring…or discharge of employees."   42 U.S.C. § 12112(a).   Disability means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of an individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1). Discrimination also includes "not making reasonable accommodations to the known physical...limitations of an otherwise qualified individual with a disability who is an...employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business...." 42 U.S.C. § 12112(b)(5)(A). Reasonable accommodation includes: "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position."   29 C.F.R. § 1630.2(o)(1)(ii).

Hamilton alleges that he was discriminated against due to SMS' failure and/or refusal to provide him with reasonable accommodations due to his disability.  "To state a prima facie claim for failure to accommodate, the plaintiff must show that: (1) he is disabled; (2) he is a qualified individual; and (3) he was discriminated against by way of the defendant's failure to provide a reasonable accommodation."   McKane v. UBS Fin. Servs., Inc., 363 Fed. Appx 679,

681 (11th Cir. 2010) (internal quotations and citations omitted); Greenberg v. BellSouth Telecomm., Inc., 498 F.3d 1258, 1263 (11th Cir. 2007). "The burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims." Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000).  See *supra* Section III.B.1.  As with his race discrimination claim, Hamilton relies exclusively on circumstantial evidence to try to establish his case.

Turning to the elements, even assuming he was qualified for the job, Hamilton has failed to satisfy his prima facie case because he has not established that he has a disability; that if he did, that SMS had knowledge of that disability; and/or that he requested any accommodations. See *supra* Section I.  While Hamilton points to his chronic bronchitis as his disability, he has not submitted any evidence that it limits one or more of his major life activities or impacts his ability to work.  And prior to beginning his assignment at SMS, Hamilton underwent a thorough medical examination and was found fit for work, with no issues or restrictions – even when he identified the chronic bronchitis to the medical professional who conducted the examination.  See *supra* Section  I.  The examiner found no impairment from the alleged condition and no limitations on Hamilton's ability to work.  Id.  Hamilton also cannot establish that he was substantially limited in the major life activity of "working" because he testified that he was fully able to perform the assignment, without any accommodation or assistance: "I didn't need anything."  (Doc. 21-1 (Dep. Hamilton at 83)).  Additionally, Hamilton has submitted no evidence that SMS knew of any alleged disability.  Instead, Hamilton testified that he never told anyone at SMS that he had a disability, and SMS' evidence indicates that neither the Supervisor, HR Manager, nor his co-worker knew of any alleged disability.  Moreover, Hamilton has submitted no evidence of him even being perceived by

SMS as having a disability or that SMS took any employment action that was based on any disability. Further, Hamilton has failed to establish that SMS discriminated against him by denying him a reasonable accommodation. Indeed, Hamilton asked for no accommodations, and no accommodations were necessary for him to perform the work. Thus, SMS' motion is **GRANTED** on this claim.

IV.     Conclusion

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment (Docs. 19-21) is **GRANTED**.

A Final Judgment consistent with the terms of this Order shall be entered by separate document as required by Rule 58 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this **9**th day of **May 2016.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**